**BOURKE, Appellant,**

v.

**CARNAHAN et al., Appellees.**

[Cite as *Bourke v. Carnahan,* 163 Ohio App.3d 818, 2005-Ohio-5422.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 05AP–194.

Decided Oct. 13, 2005.

820

Shayne & Greenwald Co., L.P.A., Gary D. Greenwald, and Michelle R. Dudley, for appellant.

Squire, Sanders & Dempsey, L.L.P., David J. Young, and Emily E. Root, for appellee Larry K. Carnahan.

Carlile, Patchen & Murphy, H. Ritchey Hollenbaugh, and Christopher J. Dusseau, for appellee Richard R. Kennedy.

BRYANT, Judge.

{¶ 1} Plaintiff-appellant, Thomas K. Bourke, appeals from the February 16, 2005 judgment entry of the Franklin County Court of Common Pleas sustaining the motion to dismiss of defendant-appellee Ronald J. Bogart and overruling plaintiff's motion for reconsideration of the trial court's August 19, 2004 decision granting the Civ.R. 12(B)(6) motions of defendants-appellees Larry K. Carnahan, Thomas D. Schultz, and Richard R. Kennedy. Plaintiff assigns a single error:

> The trial court committed reversible error by granting the separate motions of the defendants to dismiss Bourke's claims against them.

Because the trial court erred in granting the motions to dismiss, we reverse.

{¶ 2} Plaintiff's action, filed on December 17, 2002, under the civil provisions of Ohio's Racketeer Influenced and Corrupt Organizations ("RICO") statute, R.C. 2923.31 et seq., arises out of a somewhat complex factual context. According to the complaint, plaintiff was an attorney associated with the law firm of Riordan & McKinzie, P.C. ("Riordan") to represent Frank L. Bryant, and eventually his estate (the "Bryant Parties"), in a series of lawsuits in California that Richard Schultz brought against Bryant. Schultz did not prevail. Pursuant to a fee-shifting statutory provision, the United States District Court for the Northern District of California in 1994 awarded the Bryant Parties $1,187,020.47 in attorney fees and costs (the "Bryant Judgment"), plus interest. Plaintiff's law firm assigned to him its rights under the judgment, and plaintiff brought this

action seeking to recover damages incurred as a result of the alleged conspiracy and wrongful conduct of defendants, who allegedly aided and abetted Richard Schultz in hiding assets in order to thwart plaintiff's efforts to collect on the Bryant Judgment.

{¶ 3} The complaint asserts that, on May 14, 1997, the United States Circuit Court for the Ninth Circuit affirmed the Bryant Judgment against Richard Schultz, and, by January 1998, the Bryant Judgment had grown to approximately $2.1 million, exclusive of post-judgment interest. Plaintiff further alleges that defendants orchestrated a series of false and fraudulent transactions designed to suggest that Schultz had spent or lost millions of dollars through business deals, bad investments, and the like.

{¶ 4} In light of their unsuccessful attempts to collect the Bryant Judgment, plaintiff, Riordan, and the Bryant Parties agreed to receive $2 million from a company known as Judgment Resolution Corporation ("JRC"). Payment was in exchange for (1) release of their claims against Richard Schultz on further appeal, (2) the $2.1 million value of the Bryant Judgment, and (3) the right to collect legal fees associated with the award, a related appeal, and defense of multiple frivolous actions that Richard Schultz had filed against them.

{¶ 5} Plaintiff alleges that JRC, a subsidiary of a Canadian corporation formed by defendants Bogart and Kennedy, was created for the express purpose of purchasing the Bryant Judgment. According to the complaint, JRC's purchase of the Bryant Judgment was part of the conspiracy and was designed to purchase the judgment for an amount less than the sum of the face value and all damages incurred as a result of the conspiracy and to conceal from the court, the creditors, their attorneys, and others that the purchaser was a nominee for Richard Schultz.

{¶ 6} The complaint further alleges that by the summer of 2001, federal criminal charges had been brought in the Southern District of Ohio against Richard Schultz and the defendants for, among other allegations, filing a materially false federal income tax return, conspiring to defraud the United States and the Internal Revenue Service, and obstruction of justice. According to the copies of the criminal information filed against defendants and appended to the complaint, defendants pleaded guilty to various felony offenses and were sentenced accordingly with fines and, in some cases, prison terms.

{¶ 7} In 2005, plaintiff filed this action, alleging that defendants had violated the civil provisions of the Ohio RICO statute, R.C. 2923.34, by engaging in an international criminal conspiracy to prevent plaintiff from collecting a judgment that awarded him attorney fees. Plaintiff alleged that defendants' criminal conduct damaged him by forcing him to incur legal fees, time, and expense to hire experts to ferret out hidden assets and to fend off frivolous actions that the conspiracy financed. Plaintiff further asserted in the complaint that "[a]lthough

the District Court ordered R. Schultz to pay more than $1.18 million in attorneys' fees earned and costs incurred by Plaintiff and Riordan in the California Lawsuits, Plaintiff and Riordan were not able to be paid for all of their legal services and advances in that action by reason of the wrongful actions alleged herein. Plaintiff and Riordan thereafter performed additional legal services and incurred additional costs on behalf of themselves and the Bryant Parties to seek collection of the judgment indebtedness and to defend legal actions brought by R. Schultz and/or his co-conspirators to delay, thwart and discourage collection efforts."

{¶ 8} The trial court dismissed the action for lack of standing. The trial court reasoned that plaintiff was seeking recovery for the value of legal services that he and the Riordan firm had performed and the expenses that they had incurred in pursuing collection of the Bryant Judgment. The trial court determined that plaintiff had no standing to state a claim against defendants for legal fees since, under Ohio law, an award of legal fees must be entered in favor of a party litigant, not in favor of the party's attorney. Thus, according to the trial court, the right to collect on the Bryant Judgment belonged to the Bryant Parties and not to plaintiff. Moreover, since the Bryant Parties sold the Bryant Judgment to JRC, the trial court concluded that plaintiff could not base his claims on the Bryant Parties' right to collect on the judgment. Because the trial court determined that no legal duty ran from defendants to the plaintiff, it concluded that plaintiff could not state a claim upon which relief could be granted.

{¶ 9} In his single assignment of error, plaintiff contends that the trial court erred in dismissing his complaint for failure to state a claim. A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.* (1992), 65 Ohio St.3d 545, 548, 605 N.E.2d 378; *Powell v. Vorys, Sater, Seymour & Pease* (1998), 131 Ohio App.3d 681, 684, 723 N.E.2d 596. Dismissal of a complaint pursuant to Civ.R. 12(B)(6) is appropriate only when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to recover. *Springfield Fireworks, Inc. v. Ohio Dept. of Commerce,* Franklin App. No. 03AP–330, 2003-Ohio-6940, 2003 WL 22976621, at ¶ 12, citing *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus. In considering a motion to dismiss under Civ.R. 12(B)(6), the court looks only to the complaint to determine whether the allegations are legally sufficient to state a claim; it must presume all factual allegations in the complaint to be true and must draw all reasonable inferences in favor of the nonmoving party. *Springfield,* supra.

{¶ 10} Elements of standing are an indispensable part of a plaintiff's case. *Lujan v. Defenders of Wildlife* (1992), 504 U.S. 555, 561, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351. Initially, the plaintiff must have suffered an injury in fact, defined as an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent, not hypothetical or conjectural. Id. at 560, 112 S.Ct. 2130, 119 L.Ed.2d 351. Next, the conduct complained of must be causally connected to the injury. Thus, the injury must be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court. Finally, it must be likely, as opposed to merely speculative, that a favorable decision will redress the injury. Id. at 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss, the court will presume that general allegations embrace those specific facts that are necessary to support a claim. Id. at 561, 112 S.Ct. 2130, 119 L.Ed.2d 351.

{¶ 11} Plaintiff primarily argues that, under the plain language of Ohio's RICO statutes, he has adequately pleaded the elements of a RICO violation. Plaintiff further argues that, contrary to the holding of the trial court, he is not required to plead the existence of a specific duty running between him and the alleged conspirators in order to establish standing under the Ohio RICO statute. In response, defendants assert that plaintiff lacks standing because the underlying judgment does not belong to him, the claim is really a fee dispute dressed up as a RICO violation, defendants did not owe plaintiff a duty to protect plaintiff's legal fees, and plaintiff cannot rely on the Bryant Judgment to recover, as the Bryant Parties paid him in full.

{¶ 12} The trial court addressed only the issue of standing in dismissing plaintiff's complaint. In examining that issue, we look to R.C. 2923.34, which governs civil proceedings. R.C. 2923.34(A) permits prosecuting attorneys to redress injury from violations of the statute, and R.C. 2923.34(B) provides as an alternative that "[a]ny person who is injured or threatened with injury by a violation of section 2923.32 of the Revised Code may institute a civil proceeding in an appropriate court seeking relief from any person whose conduct violated or allegedly violated section 2923.32 of the Revised Code or who conspired or allegedly conspired to violate that section." The act thus provides that persons indirectly injured by violations of the act have standing. See *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.* (N.D.Ohio 1998), 23 F.Supp.2d 771 (holding that a union health trust had standing to sue tobacco companies to recover medical expenses paid by the trust and allegedly caused by beneficiaries' smoking).

{¶ 13} With the allegations of the complaint construed in favor of plaintiff, the complaint pleads all the elements of a civil RICO claim. First, plaintiff alleges in detail the acts that defendants committed in violation of the criminal RICO statute, R.C. 2923.32, and further alleges that defendants have pleaded guilty in related federal criminal cases for their roles in the scheme. Second, plaintiff alleges that he suffered injury because he was forced to incur legal fees, time, and out-of-pocket expenses to hire experts to ferret out hidden assets, as well as to fend off frivolous harassing actions financed by the conspiracy to which defendants belonged. Finally, plaintiff pleads that the conduct of defendants proximately caused the damages he suffered. Indeed, the complaint asserts, through many allegations, that the conspirators' money laundering and other acts were designed to hinder and delay collection of the judgment, to shield the funds from creditors, including plaintiff, and to defeat the lawful efforts of plaintiff to collect a valid judgment. Moreover, to the extent that defendants contend plaintiff released any rights to collect, plaintiff's complaint asserts that plaintiff agreed not to collect costs from Richard Schultz, but that he never agreed to release defendants from his efforts to collect costs.

{¶ 14} Defendants, however, point out that, under Ohio law, the Bryant Judgment belonged to the Bryant Parties and not to plaintiff. Thus, they argue, plaintiff did not have a legally protected interest that was injured by defendants' conduct in allegedly hindering efforts to collect the judgment. In response, plaintiff states that, although he did not need to have an ownership interest in the California attorneys' fee judgment in order to proceed with his RICO claim, under California law, he nonetheless did have a legally protected interest. Because the legal proceedings giving rise to the judgment occurred in California and the judgment was entered in California, we apply California law.

{¶ 15} Plaintiff relies on *Flannery v. Prentice* (2001), 26 Cal.4th 572, 110 Cal.Rptr.2d 809, 28 P.3d 860, 871, for the proposition that absent an enforceable agreement to the contrary, attorney fees awarded under a fee-shifting statute belong to the attorneys who labored to earn them. In *Flannery*, the Supreme Court of California held that the proceeds of an attorney-fee award under the Fair Employment and Housing Act belonged to the attorneys for whose work they were awarded.

{¶ 16} Here, the complaint indicates that the motion for attorney fees in the California litigation was made under Ohio's RICO fee-shifting provisions. Our research discloses that although some courts have sought to distinguish *Flannery*, it appears that under California law, a legally enforceable interest in an award of attorney fees can arise on behalf of the attorney after the client authorizes his or her attorneys to seek fees on his or her behalf. See, e.g.,

*Churchill Village, L.L.C. v. Gen. Elec.* (C.A.9, 2004), 361 F.3d 566, 580. Under *Flannery,* plaintiff had a legally protected interest in the Bryant Judgment.

{¶ 17} Plaintiff also alleges in the complaint that he, along with Riordan and the Bryant Parties, agreed to sell the Bryant Judgment. Although the purchase agreement is not attached to the complaint, the pleadings allow a reasonable inference that plaintiff was a party to the sale of the Bryant Judgment. Similarly, they also allow a reasonable inference that the discounted sale of the Bryant Judgment to a company the conspirators set up was part of the pattern of corrupt activity and may have resulted in economic damage to the Bryant Parties and to plaintiff.

{¶ 18} Because plaintiff sufficiently pleads that he does have a legally protected interest and was injured by the criminal conduct of defendants in creating additional burdens and expense, we conclude that plaintiff has stated a claim upon which relief can be granted. We note, however, that this is not an ordinary case in which an attorney receives a lesser fee than originally contemplated. Plaintiff alleges in his complaint that this was an international criminal conspiracy of great complexity that required expert involvement and considerable attendant effort and expense to unravel. Thus, the fact that plaintiff has standing to proceed with his RICO claims does not suggest that attorneys disgruntled with frustrated attempts to collect on a judgment may sue to collect their fees or damages.

{¶ 19} Based on the foregoing, plaintiff's assignment of error is sustained, the judgment of the trial court is reversed, and the cause is remanded for further proceedings in accordance with this opinion.

Judgment reversed<br>and cause remanded.

PETREE and FRENCH, JJ., concur.