SOUTHERN CHRISTIAN LEADERSHIP CONFERENCE et al., Appellants,

v.

COMBINED HEALTH DISTRICT et al., Appellees.

[Cite as *S. Christian Leadership Conference v. Combined Health Dist.*, 191 Ohio App.3d 405, 2010-Ohio-6550.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23586.

Decided Dec. 30, 2010.

406

408

Scaccia & Associates, L.L.C., and John J. Scaccia, for appellants.

Surdyk, Dowd & Turner Co., Robert J. Surdyk, and Brendan D. Healy; and Mathias Heck Jr., Montgomery County Prosecuting Attorney, and John A. Cumming, Assistant Prosecuting Attorney, for appellees Combined Health District, the Montgomery County Health Commissioner, and the Montgomery County Board of Health.

J. Hollingsworth & Associates, L.L.C., and Jonathan Hollingsworth, for appellee Mt. Olive Baptist Church.

---

BROGAN, Judge.

{¶ 1} Before us is the appeal of the Southern Christian Leadership Conference ("SCLC") and five taxpayers (the "taxpayers") from a trial court's judgment dismissing their respective claims for lack of standing and from the trial court's judgment overruling their motion to amend the complaint and motion for Civ.R. 60(B)(5) relief. After review, we conclude that the factual allegations in the

complaint establish SCLC's standing. But we conclude that the allegations do not establish the taxpayers' standing. We further conclude that the trial court properly overruled the motions. Accordingly, we will in part affirm the judgment of dismissal and in part reverse it, and we will affirm the judgment that overruled the motions.

## I. Facts

{¶ 2} Here are the facts pertinent to this appeal, taken from the factual allegations in the amended complaint, which for purposes of deciding a Civ.R. 12(B)(6) motion to dismiss are presumed true.

{¶ 3} There are several parties in this case. SCLC is a nonprofit, charitable organization, and the taxpayers are individual taxpaying residents of Montgomery County. Mount Olive is a church in Montgomery County, and the Combined Health District ("CHD") is a public-health agency serving Dayton and Montgomery County, also known as Public Health Dayton and Montgomery County. CHD is run by the Montgomery County Health Commissioner and the Montgomery County Board of Health. The latter oversees CHD's operations, which includes the awarding of grants for community-health-education programs. For the past 16 years, CHD has awarded SCLC a grant to operate an HIV/AIDS education program known as the "RACE" program. CHD's reviews of SCLC's performance in operating the RACE program have ranged from very good to outstanding.

{¶ 4} In May 2008, CHD solicited grant proposals for three HIV/AIDS community-education programs, one of which was the RACE program. Selection was competitive, and proposals were submitted under seal. SCLC submitted a proposal for the grant. Among the other organizations to submit a proposal was Mount Olive Baptist Church. CHD was required to evaluate the proposals in part based on the organizations' experience in running such programs. For organizations that had received grants previously, CHD was also to consider their historical performance. After evaluating all the proposals, CHD awarded the grant to Mount Olive.

{¶ 5} Subsequently, SCLC learned disturbing information about Mount Olive's proposal and how CHD had made its decision. SCLC became aware of allegations that Mount Olive's proposal contained material misrepresentations and falsehoods with respect to its knowledge and experience running community-education programs. SCLC also learned of allegations that some signatures on Mount Olive's proposal were forged. SCLC presented these allegations to CHD, but CHD refused to investigate them. CHD also said that it did not consider SCLC's historical performance running the RACE program, though CHD did

consider the historical performance of other previous grant recipients who submitted proposals.

{¶ 6} On December 23, 2008, SCLC and the taxpayers filed a complaint—later amended—in the Montgomery County Common Pleas Court. The complaint named as defendants CHD, the Montgomery County Health Commissioner, the members of the Montgomery County Board of Health, and Mount Olive. In the complaint, SCLC and the taxpayers each stated several theories of their claims. SCLC alleged against CHD civil conspiracy, retaliation, and fraud, and against Mount Olive, tortious interference, civil conspiracy, and fraud. The taxpayers alleged against CHD civil conspiracy, breach of fiduciary duty, and misuse of public funds under R.C. 309.13, and against the Montgomery County Health Commissioner and the members of the Montgomery County Board of Health, breach of fiduciary duty as well as misuse of public funds under R.C. 309.13. Finally, against Mount Olive, the taxpayers alleged civil conspiracy and fraud. In the alternative, SCLC and the taxpayers requested a writ of mandamus and/or prohibition. For relief, they demanded an injunction enjoining CHD from awarding the grant to Mount Olive and an injunction enjoining Mount Olive from accepting the grant. They also demanded an order directing CHD to reevaluate the grant proposals. In response to the complaint, Mount Olive and CHD—for itself, the Montgomery County Health Commissioner, and the Montgomery County Board of Health—each filed a motion to dismiss under Civ.R. 12(B)(6) for failure to state a claim on which relief can be granted. In their respective motions, Mount Olive and CHD contended that neither SCLC nor the taxpayers had standing to bring any of the claims.

{¶ 7} On July 22, 2009, the trial court agreed that SCLC and the taxpayers did not have standing, so it dismissed all their claims. On July 31, SCLC and the taxpayers filed three motions, a motion for Civ.R. 60(B) relief, an alternative motion for reconsideration, and a motion to amend the caption of the complaint. A week later, the trial court overruled all three motions on the grounds that it did not have jurisdiction to grant them. SCLC and the taxpayers then filed a timely notice of appeal of the judgment that dismissed their claims. And a little over a week later, they filed an amended notice of appeal that stated their intent to also appeal the judgment overruling the three motions.

## II. Threshold Issue of Jurisdiction

{¶ 8} Before considering the assignments of error, we first address a threshold issue raised by Mount Olive concerning our jurisdiction over part of the judgment of dismissal. Mount Olive contends that we lack jurisdiction to review that part of the judgment in which the trial court sustained Mount Olive's motion to dismiss and dismissed the claims against it. Jurisdiction is lacking, Mount

Olive argues, because the notice of appeal does not designate that part of the judgment but designates only the part in which the trial court sustained CHD's motion to dismiss and dismissed the claims against it.

{¶ 9} App.R. 3 dictates how a party appeals (as of right) a trial court's judgment or order. According to paragraph (A), "the only jurisdictional requirement for the filing of a valid appeal is the timely filing of a notice of appeal." *Transamerica Ins. Co. v. Nolan* (1995), 72 Ohio St.3d 320, 322, 649 N.E.2d 1229. The issue then becomes whether the notice contains any other defects, and if it does, whether sanctions are warranted. See id. (if the notice contains any other defects, "a court of appeals is vested with discretion to determine whether sanctions, including dismissal, are warranted"); App.R. 3(A). App.R. 3(D) dictates the items a notice of appeal must specify. Among them, "[t]he notice of appeal * * * shall designate the judgment, order or part thereof appealed from." App.R. 3(D).

{¶ 10} While plaintiffs-appellants timely filed the notice of appeal, Mount Olive is correct that the notice expressly states only plaintiffs-appellants' intent to appeal "from the Decision Sustaining Motion to Dismiss Defendants Combined Health District of the Montgomery County Court of Common Please [sic], Civil Division, entered on July 22, 2009." The notice, then, does not expressly designate that part of the judgment concerning its motion to dismiss. But for this defect, we conclude that sanctions are unnecessary.

{¶ 11} Looking behind the form of the notice, we think that plaintiffs-appellants' clear intent was to appeal the entire judgment of dismissal. Evidence for this is found in the first assignment of error, in which SCLC argues that the trial court wrongly dismissed its tortious-interference claim, a claim it brings only against Mount Olive. Moreover, the purpose of filing a notice of appeal "is to '* * * apprise the opposite party of the taking of an appeal.' " *Maritime Mfrs., Inc. v. Hi–Skipper Marina* (1982), 70 Ohio St.2d 257, 259, 24 O.O.3d 344, 436 N.E.2d 1034, quoting *Capital Loan & Sav. Co. v. Biery* (1938), 134 Ohio St. 333, 339, 12 O.O. 128, 16 N.E.2d 450. We find no evidence that the notice of appeal somehow misled Mount Olive about plaintiffs-appellants' intent. Further, "justice is ultimately best served by an attitude of judicial tolerance toward minor errors, made in good faith, which pose no danger of prejudice to the opposing party or to the court's essential functions." *Natl. Mut. Ins. Co. v. Papenhagen* (1987), 30 Ohio St.3d 14, 16, 30 OBR 21, 505 N.E.2d 980. We find no evidence that Mount Olive was prejudiced or taken by surprise. Indeed, it is evident that Mount Olive well understood that plaintiffs-appellants' intent was to appeal the entire judgment of dismissal because Mount Olive timely filed an appellee's brief supporting that part of the judgment concerning its motion to dismiss.

{¶ 12} We conclude that we have jurisdiction over the entire judgment of dismissal.

### III. Dismissal of Plaintiff–Appellants' Claims

{¶ 13} SCLC and the taxpayers assign four errors to the trial court. The first and second concern the judgment dismissing their claims, and the third and fourth concern the judgment overruling their two motions.

**First Assignment of Error**

{¶ 14} "The SCLC and/or the Taxpayers had Standing to Challenge the Grant Award Under the Circumstances Alleged in the Complaint and Supported by Affidavit."

{¶ 15} In the complaint, SCLC and the taxpayers allege that by failing to consider SCLC's historical performance in its evaluation, CHD in effect unfairly changed the evaluation criteria after the proposals had been submitted and without notifying SCLC. Regarding Mount Olive, they allege that it submitted a fraudulent proposal, containing material misrepresentations, lies, and forged signatures, allegations that are described in three attachments—two affidavits and a letter to the director of the Ohio Department of Health from the Aids Resource Center of Ohio. SCLC and the taxpayers allege that CHD knew, or at least should have known, about the problems with Mount Olive's proposal, but did nothing. These factual allegations, they contend, are sufficient to establish their standing to bring the dismissed claims.[1] The question of whether SCLC and the taxpayers have standing to bring claims against defendants-appellees for their conduct must be resolved for SCLC and the taxpayers separately and with respect to each defendant-appellee against whom they have a claim. But first we must review the law, which is not in dispute.

■ {¶ 16} The Civil Rules of Procedure allow a defendant to move for the dismissal of a claim against it for "failure to state a claim upon which relief can be granted." Civ.R. 12(B)(6). A court may grant that motion only when it appears from the allegations in the pleading beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief under the law. *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus. Absent standing, a party has no right to seek relief in a court of law. See *Cuyahoga Cty. Bd. of Commrs. v. State,* 112 Ohio St.3d 59, 2006-Ohio-6499, 858 N.E.2d 330, at ¶ 22 ( "[a] preliminary inquiry in all legal claims is the issue of standing").

---

1. Plaintiffs-appellants do not appeal the trial court's dismissal of their alternative request of a writ of mandamus and/or prohibition.

{¶ 17} The rule of standing concerns the legal capacity of a party to seek relief for a claim in a court of law. *State ex rel. Jones v. Suster* (1998), 84 Ohio St.3d 70, 77, 701 N.E.2d 1002. Under Ohio law, the rule is one of restraint that courts impose on themselves. *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 470, 715 N.E.2d 1062. The rule is premised on the idea that "one having no right or interest to protect ordinarily may not invoke the jurisdiction of a court." (Citation omitted.) *State ex rel. Dallman v. Ct. of Common Pleas, Franklin Cty.* (1973), 35 Ohio St.2d 176, 178, 64 O.O.2d 103, 298 N.E.2d 515. A party must have "some real interest in the subject matter of the action." Id. at 179. A party establishes that real interest most often by showing "[1] that he or she has suffered or is threatened with direct and concrete injury * * *, [2] that the [defendant] * * * caused the injury, and [3] that the relief requested will redress the injury." *Sheward* at 469–470, 715 N.E.2d 1062; see also *Bourke v. Carnahan*, 163 Ohio App.3d 818, 2005-Ohio-5422, 840 N.E.2d 1101, at ¶ 10. At the pleading stage, a party establishes standing by alleging enough general facts to show that injury resulted from the defendant's conduct, because when deciding a motion to dismiss, a court will presume "that general allegations embrace those specific facts that are necessary to support a claim." *Bourke* at ¶ 10, citing *Lujan v. Defenders of Wildlife* (1992), 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351.

### A. SCLC has standing

{¶ 18} SCLC brings one claim against CHD and one against Mount Olive. We begin with the claim against CHD.

### 1. SCLC has standing vis-à-vis CHD

{¶ 19} The trial court's conclusion (that SCLC lacks standing to assert a claim against CHD) is based on its view that SCLC is claiming injury based on the mere fact that CHD did not award it the grant. The court said that the award was a discretionary decision of CHD. Because SCLC could not show that it alone was entitled to the grant, concluded the court, SCLC has not alleged any injury. See *Graphic Ents. of Ohio, Inc. v. Bd. of Ed. Akron City Sch. Dist.* (June 15, 1988), Summit App. Nos. 13269, 13274, 1988 WL 63941 ("In order to demonstrate an injury sufficient to confer standing [to object to an award of a public contract], [a plaintiff] must show that it, and no one else, was entitled to the subject contract").

{¶ 20} While the award of a public contract generally is within the awarding public-entity's discretion, see *Reiter Dairy, Inc. v. Ohio Dept. of Health*, Franklin App. No. 01AP–944, 2002-Ohio-2402, 2002 WL 977294, at ¶ 35, the law grants a disappointed bidder injunctive relief if the award constitutes an

abuse of a public entity's discretion and resulted in some tangible harm to the bidder. See *Monarch Constr. Co. v. Ohio School Facilities Comm.*, 150 Ohio App.3d 134, 2002-Ohio-6281, 779 N.E.2d 844, at ¶ 35 (" '[T]o prevail on a complaint seeking injunctive relief with respect to the award of a public contract, [the contractor] must prove by clear and convincing evidence that the award constituted an abuse of discretion and resulted in some tangible harm to the public in general, or to [the contractor] individually,' " quoting *Cleveland Constr., Inc. v. Ohio Dept. of Adm. Serv., Gen. Serv. Adm.* (1997), 121 Ohio App.3d 372, 383, 700 N.E.2d 54); *Rein Constr. Co. v. Trumbull Cty. Bd. of Comm.* (2000), 138 Ohio App.3d 622, 631, 741 N.E.2d 979 (quoting the same); see also *Cementech, Inc. v. Fairlawn*, 109 Ohio St.3d 475, 2006-Ohio-2991, 849 N.E.2d 24, at ¶ 10 (a rejected bidder is limited to injunctive relief against a municipality that violates competitive-bidding law in awarding a competitively bid project). An unsuccessful bidder may bring suit for injunctive relief when the bidder alleges that the public entity's award of a public contract is unlawful. *Cleveland Constr.* at 384, 700 N.E.2d 54; see *Wilson Bennett, Inc. v. Greater Cleveland Regional Transit Auth.* (1990), 67 Ohio App.3d 812, 818, 588 N.E.2d 920 ("A corporation has standing to bring a suit for declaratory and injunctive relief, if there is a justiciable controversy affecting it as a prospective or disappointed bidder seeking to enjoin the award and execution of a contract it contends is contrary to law.") In order to establish standing sufficient to survive a motion to dismiss, SCLC need only allege that it has been harmed by CHD's unlawful grant award, which was an abuse of discretion.

{¶ 21} Construing the factual allegations in the complaint in favor of SCLC, we conclude that it has established standing. SCLC alleges that CHD's improper evaluation of its grant proposal resulted in SCLC's not being fairly considered for the grant. Such general allegations are sufficient, at this stage, to show that SCLC was injured by CHD's conduct. Therefore, SCLC has standing to bring its claim against CHD.

## 2. SCLC has standing vis-à-vis Mount Olive

{¶ 22} In the complaint, SCLC alleges that Mount Olive's submission of a fraudulent proposal resulted in CHD's decision not to award SCLC the grant. SCLC alleges that Mount Olive engaged in tortious interference and civil conspiracy. Tortious interference generally occurs when a person improperly induces or otherwise purposely causes a third person not to enter into or continue a business relationship with another or not to perform a contract with another. See *Fred Siegel Co., L.P.A. v. Arter & Hadden* (1999), 85 Ohio St.3d 171, 707 N.E.2d 853. And the law gives the other a right of action against the interloper

to redress the harm caused by the wrongful interference. Civil conspiracy occurs when two or more individuals together harm another in a way that one alone could not. Here, SCLC alleges that by submitting a fraudulent application, Mount Olive improperly induced or caused CHD not to award SCLC the grant. SCLC also alleges that CHD could not have awarded Mount Olive the grant if Mount Olive had not submitted the fraudulent application. Such allegations of injury are sufficient to establish SCLC's standing to seek relief from Mount Olive.

## B. Taxpayers lack standing

{¶ 23} The taxpayers bring one claim against CHD, one claim against the members of the board of health, and one against Mount Olive. We first address together the claim against CHD and the claim against the members of the board of health.

### 1. The taxpayers lack standing vis-à-vis CHD and the board

{¶ 24} The rule for common-law taxpayer standing was established in *State ex rel. Masterson v. Ohio State Racing Comm.* (1954), 162 Ohio St. 366, 55 O.O. 215, 123 N.E.2d 1. There, the Ohio Supreme Court said that it is "fundamental that at common law and apart from statute, a taxpayer can not bring an action to prevent the carrying out of a public contract or the expenditure of public funds unless he had some special interest therein by reason of which his own property rights are put in jeopardy." Id. at 368. "In other words," the court said, "private citizens may not restrain official acts when they fail to allege and prove damage to themselves different in character from that sustained by the public generally." Id., citing 52 American Jurisprudence 3, Section 3. Over 50 years later, the court reiterated these ideas: "Ohio law does not authorize a private Ohio citizen, acting individually and without official authority, to prosecute government officials suspected of misconduct based on the citizen's status as a taxpayer of general taxes." *State ex rel. Dann v. Taft*, 110 Ohio St.3d 252, 2006-Ohio-3677, 853 N.E.2d 263, at ¶ 9. "[But] longstanding Ohio law does recognize that a taxpayer with a 'special interest' in particular public funds has standing to seek equitable relief in a court of equity to remedy a wrong committed by public officers in the management of those funds." Id. at ¶ 10, citing *Racing Guild of Ohio, Local 304, Serv. Emps. Internatl. Union, AFL–CIO, CLC v. Ohio State Racing Comm.* (1986), 28 Ohio St.3d 317, 28 OBR 386, 503 N.E.2d 1025.

{¶ 25} The taxpayers here have not alleged any special interest in the publicly funded grant. No taxpayer applied for the grant, so none was denied. Nor have they alleged any other interest in the grant that would distinguish them

from the public generally. Therefore, the taxpayers lack standing to bring a common-law claim against either CHD or the members of the board of health.

### 2. The trial court lacks jurisdiction over the taxpayers' statutory action under R.C. 309.13

{¶ 26} R.C. 309.13 grants a county taxpayer the right to file suit in the name of the state against a county official whom the taxpayer alleges has misused public funds. But the right to file suit does not vest until "the prosecuting attorney fails, upon the *written request* of [the] taxpayer," to file suit. (Emphasis added.) R.C. 309.13. The Ohio Supreme Court has referred to the conditions in this section as the "jurisdictional and procedural prerequisites for maintaining an R.C. 309.13 taxpayer's action." *United States Corrs. Corp. v. Ohio Dept. of Indus. Relations* (1995), 73 Ohio St.3d 210, 217, 652 N.E.2d 766.

{¶ 27} The trial court here dismissed the taxpayers' county-taxpayer suit for lack of standing because the court found that in the complaint, the taxpayers fail to allege that before filing suit, they made a written request of the Montgomery County Prosecuting Attorney. The trial court is correct that the taxpayers may not bring suit under R.C. 309.13, but not because they fail to establish standing. Rather, the taxpayers fail to establish the trial court's jurisdiction.

### i. The taxpayers fail to allege that they sent the prosecuting attorney written notice

{¶ 28} " 'Although the Court of Common Pleas is a court of general jurisdiction, the jurisdiction it may exercise must be found either expressly or by necessary implication in statutory enactments.' " *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9* (1991), 59 Ohio St.3d 167, 169, 572 N.E.2d 87, quoting *Fletcher v. Coney Island* (1956), 165 Ohio St. 150, 154, 59 O.O. 212, 134 N.E.2d 371. "[W]here a statute prescribes the grounds for the exercise of jurisdiction in a particular action, such grounds must be set forth, and the necessary jurisdictional facts must appear, or the judgment will be void and subject to collateral attack." *Trent v. Trent* (App.1960), 15 O.O.2d 226, 174 N.E.2d 274. Accordingly, it is an elementary principle in pleading, that "where a statute, upon certain conditions, confers a right or gives a remedy unknown to the common law, the party asserting the right or availing himself of the remedy must in his pleading bring himself clearly within the statute." *Stipanovich v. Applin* (1991), 74 Ohio App.3d 506, 510, 599 N.E.2d 711, citing *Haskins v. Alcott & Horton* (1862), 13 Ohio St. 210.

{¶ 29} The taxpayers' allegations in the complaint fail to bring them clearly within R.C. 309.13. They allege in the complaint that "[t]he Prosecuting

Attorney for Montgomery County is unable or unwilling to make the application or institute the requested civil action." But the taxpayers never allege that they in fact made written request of the prosecuting attorney. The taxpayers argue that this may be inferred from the above statement, but we do not think that such an inference is permissible. Nothing suggests that the statement of unwillingness was based on the prosecuting attorney's response to the taxpayers' written request. It could just as likely be based on their oral request, or on hearsay, or purely on the taxpayers' own speculation about what the prosecuting attorney is unwilling to do. While the standards for pleading a claim are liberal, a court's jurisdiction over the subject matter of the action must be clear. And it is not clear from the factual allegations in the complaint that the court here has the jurisdiction granted by R.C. 309.13 to hear the county-taxpayer suit.

{¶ 30} The taxpayers say that they did give written notice. To their memorandum in opposition to CHD's motion to dismiss, the taxpayers attached an affidavit that avers that a letter requesting the prosecuting attorney to file suit was faxed to him before they filed suit. The letter and fax log were also attached to the memorandum. According to the fax log, the letter was sent at 11:27 a.m. on December 22, 2009, the day before the taxpayers filed their complaint. The letter demands from the prosecuting attorney a decision by 5:00 p.m. that same day. Noting the affidavit, the trial court correctly disregarded it as presenting "matters outside the pleading," which are not proper to consider when determining whether to grant a motion to dismiss. See Civ.R. 12(B). The court acknowledged that it could consider the affidavit if it converted the motion to dismiss into a motion for summary judgment. See id. But, said the court, even so, it would grant summary judgment because the taxpayers failed to give the prosecuting attorney a reasonable amount of time in which to evaluate the request and decide whether to file an action.

{¶ 31} Because the trial court did not convert the motion, the reasonable-time issue is not properly before us, so we need not address it. But had we addressed it, we would likely agree with the trial court. See *State v. Slagle* (June 12, 1980), Miami App. No. 78 CA 27, 1980 WL 352679, citing *Mulder v. Amherst* (1962), 115 Ohio App. 117, 20 O.O.2d 227, 184 N.E.2d 602 (under R.C. 733.59, which grants taxpayers the right to bring a municipality-taxpayer suit and contains language similar to that in R.C. 309.13, the taxpayer must allow the solicitor or city law-director a reasonable time after receipt of a written request before instituting an action); *Nunnold v. Toledo* (1935), 52 Ohio App. 172, 6 O.O. 277, 3 N.E.2d 550; *Ampt v. Cincinnati* (1904), 2 Ohio N.P. 489; see also *Ratliff v. Bd. of Governors of Marion General Hosp.* (July 11, 1979), Marion App. No. 9–79–6, 1979 WL 207998.

### ii. The taxpayers fail to establish the futility exception

{¶ 32} In the second assignment of error,[2] the taxpayers contend that the futility exception applies here to excuse written notice. Futility is an exception to the written-notice requirement under R.C. 309.13 when it can be shown that written notice would have been useless because the prosecuting attorney would not have acted. *Cincinnati ex rel. Ritter v. Cincinnati Reds, L.L.C.*, 150 Ohio App.3d 728, 2002-Ohio-7078, 782 N.E.2d 1225, at ¶ 27, citing *State ex rel. Nimon v. Springdale* (1966), 6 Ohio St.2d 1, 35 O.O.2d 1, 215 N.E.2d 592, and *State ex rel. White v. Cleveland* (1973), 34 Ohio St.2d 37, 63 O.O.2d 79, 295 N.E.2d 665 (applying the futility exception to a county-taxpayer action under R.C. 309.13). But the exception " 'must be established from events which occur *before* the action is commenced and not reconstructed from hindsight.' " (Emphasis sic.) *Ritter* at ¶ 27, quoting *Jenkins v. Eberhart* (1991), 71 Ohio App.3d 351, 357, 594 N.E.2d 29. Here, as proof that written notice would have been futile, the taxpayers point to the fact that the prosecuting attorney filed a notice of appearance on CHD's behalf, signaling his support for CHD. But the attorney did not file the notice until a week after the taxpayers filed suit. Because the taxpayers have not shown futility from prefiling events, they may not avail themselves of the exception.

### 3. The taxpayers lack standing vis-à-vis Mount Olive

{¶ 33} With respect to their claim against Mount Olive, the taxpayers simply have not alleged any conduct by Mount Olive that has caused them direct and concrete injury.

{¶ 34} The first assignment of error is sustained in part and overruled in part, and the second assignment of error is entirely overruled.

### IV. Postdismissal Motions

**Third Assignment of Error**

{¶ 35} "Appellants Should have been Granted Leave to Amend any Technical Deficiencies in the Pleadings."

**Fourth Assignment of Error**

{¶ 36} "The trial [sic] Court did not loose [sic] Jurisdiction to Grant Civ.R. 60 Relief Prior to the Filing of a Notice of Appeal."

{¶ 37} After the trial court granted defendants-appellees' motions to dismiss, plaintiffs-appellants filed a motion denominated "Motion for Civ.R. 60

---

2. "Notice to the Prosecuting Attorney was Sufficiently Alleged or was otherwise a Vain or Useless Act."

Relief and Alternative Motion to Reconsider and to Amend Caption of the Complaint." The trial court overruled these motions, reasoning that because its order granting the motions to dismiss was final and appealable, it did not have jurisdiction to consider them. The trial court is correct with respect to the motion for reconsideration, see *Pitts v. Ohio Dept. of Transp.* (1981), 67 Ohio St.2d 378, 380, 21 O.O.3d 238, 423 N.E.2d 1105 (a motion for reconsideration filed after a final judgment "must be considered a nullity"), and plaintiffs-appellants do not appeal that part of the judgment.[3] But the court did not address the other two motions.

{¶ 38} In the third assignment, plaintiffs-appellants seek to amend the caption of their complaint because, as the trial court pointed out in its decision dismissing their claims, a county-taxpayer suit under R.C. 309.13 is to be brought in the name of the state, which plaintiffs-appellants did not do. In light of our conclusion above, however, that the trial court does not have jurisdiction over such an action, this assignment of error is moot.

{¶ 39} Turning to the fourth assignment of error, a trial court is not divested of jurisdiction to consider a Civ.R. 60(B) motion until the subject judgment is appealed. *Howard v. Catholic Social Servs. of Cuyahoga Cty., Inc.* (1994), 70 Ohio St.3d 141, 147, 637 N.E.2d 890 ("an appeal divests trial courts of jurisdiction to consider Civ.R. 60(B) motions for relief from judgment"). Plaintiffs-appellants did not file their notice of appeal until after the court ruled on their motion. Therefore, the trial court had jurisdiction to consider the motion. Nevertheless, the trial court properly overruled it. "Civ.R. 60(B) may not be used as a substitute for appeal." *Doe v. Trumbull Cty. Children Servs. Bd.* (1986), 28 Ohio St.3d 128, 131, 28 OBR 225, 502 N.E.2d 605. Plaintiffs-appellants argued in the motion that the court wrongly concluded that they lacked standing and should have allowed them to amend their complaint. These issues are issues to be raised on appeal, not in a Civ.R. 60(B) motion.

{¶ 40} The third and fourth assignments of error are overruled.

---

**3.** Here, we observe, there is an unraised issue concerning our jurisdiction. Almost two weeks after plaintiffs-appellants filed their original notice of appeal, they filed an amended notice of appeal that added the judgment overruling the motion presently under discussion. But plaintiffs-appellants never sought leave to amend from this court, which we have said App.R. 3(F) implicitly requires. See *Cox v. Cox* (Dec. 7, 1994), Montgomery App. No. 14446, 1994 WL 681126. Consequently, it is somewhat unclear whether we have jurisdiction to consider the appeal of this judgment. But because defendants-appellees appear to be operating under the belief that we do have jurisdiction (not raising the issue, and responding to the third and fourth assignments of error), we sua sponte exercise our discretion under App.R. 3(F) and grant plaintiffs-appellants' implied request for leave to amend their notice of appeal.

## V. Conclusion

{¶ 41} We have sustained in part and overruled in part the first assignment of error, and we have overruled the second assignment of error. We also have overruled both the third and fourth assignments of error. Accordingly, the judgment of the trial court dismissing plaintiff-appellants' claims is affirmed in part and reversed in part. The judgment overruling plaintiff-appellants' motions is affirmed. This cause is remanded for further proceedings.

Judgment affirmed in part
and reversed in part,
and cause remanded.

FAIN and DINKELACKER, JJ., concur.

DINKELACKER, J., of the First District Court of Appeals, sitting by assignment.