[Cite as *Swank v. Swank*, 2011-Ohio-6920.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

ROBERT L. SWANK, et al.

     Plaintiffs-Appellees

v.

FREEMAN J. SWANK, JR., et al.

     Defendants-Appellants

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. John W. Wise, J.
Hon. Julie A. Edwards, J.

Case No. 2011 CA 8


O P I N I O N


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from the Court of Common Pleas, Case No. 96 CV 0254 |
| JUDGMENT: | Affirmed in part; reversed in part |
| DATE OF JUDGMENT ENTRY: | December 30, 2011 |

APPEARANCES:

| | |
|---|---|
| For Plaintiffs-Appellees Robt. & E. Clark | For Defendant-Appellant Mary Jane |
| MICHAEL L. INSCORE<br>INSCORE, RINEHARDT, WHITNEY<br>& ENDERLE<br>13 Park Avenue West, Suite 400<br>Mansfield, Ohio 44902-1741 | SHAWN W. MAESTLE<br>ANGELA G. CARLIN<br>WESTON HURD<br>1301 East 9th Street, Suite 1900<br>Cleveland, Ohio 44114-1862 |
| For Defendant-Appellee Rheabelle | For Defendant-Appellant Freeman and Appellee Estate |

JOHN K. KELLER
VORYS, SATER, SEYMOUR & PEASE ROBERT S. NAYLOR
Post Office Box 1008 Post Office Box 4697
Columbus, Ohio  43216 Steubenville, Ohio  43952

*Wise, J.*

{¶1} Defendants-appellants Freeman J. Swank, Jr. and Mary Jane Swank appeal the jury verdict entered in the Court of Common Pleas of Richland County, Ohio, in favor of Plaintiffs-Appellees Robert L. Swank and E. Clark Swank

{¶2} Robert L. Swank and E. Clark Swank filed a cross-appeal, challenging the trial court's judgment notwithstanding the verdicts as to their claims of unjust enrichment, along with the trial court's December 8, 2009, Judgment Entry denying their motion for leave to file an amended complaint and dismissing their claims for constructive fraud and promissory estoppel.

## STATEMENT OF THE FACTS AND CASE

{¶3} The case has a very long and complicated history dating back to at least 1995.  Freeman Swank, Sr., now deceased, and his wife Rheabelle Swank are the parents of Freeman Swank, Jr., Robert L. Swank, and E. Clark Swank.

{¶4} Freeman Sr. and Rheabelle owned approximately 670 acres of farm land, on which they conducted dairy and farming operations and raised hogs.  The land was referred to as the Residence Farm (76 acres), the Dairy Farm (305 acres) and the Hog Farm (275 acres).

{¶5} Robert and Clark worked on the family farm, Robert beginning in 1965 and Clark in 1968.  According to Robert, Freeman Sr. had promised that approximately 285 acres of the property, including the dairy operations and a farm house where Robert lived, would be conveyed to Robert upon the deaths of his parents, if not sooner.  Clark

alleged the Swank parents had promised to title 270 acres of the property, where the parties conducted the hog raising operation, as well as the farmhouse where Clark lived, to Clark upon their deaths, if not sooner.

{¶6} Both Clark and Robert allege during the time they worked the family farm they received weekly draws of substantially less than the minimum wage, along with tenancy rights in the farmhouses. They allege from time to time, each had to borrow money to finance various aspects of the farming operations and to maintain and purchase farm equipment and livestock.

{¶7} Clark and Robert alleged they were actually partners in the family farm, but because of income tax considerations, the family operated the business as a proprietorship rather than a partnership.

{¶8} Clark and Robert also allege that on a number of occasions, prior to 1995, their parents, Freeman Swank, Sr. and Rheabelle Swank, showed them their wills[1] which, upon the death of the surviving parent, left either all of the farm property, or just the hog and dairy farms to Robert and Clark.

{¶9} In the late 1970's, early 1980's, the farming operations began to lose money, requiring the parents to use personal funds and to mortgage the property to keep the farm going. In 1983, Freeman, Sr. and Rheabelle obtained a mortgage loan with Bank One in the amount of $550,000. When their financial situation did not improve, the parents took out additional loans.

---

[1] The Swanks, Sr. executed reciprocal wills in 1950, 1968, 1982, 1995 and 1996.

**{¶10}** Further, in the early 1980s' Freeman, Sr. became ill and was diagnosed with pancreatic cancer, which would lead to two-year period of hospitalization at the Cleveland Clinic.

**{¶11}** In October, 1995, AgriMark, a feed supplier, obtained a default judgment in the amount of $77,844.00, including interest accruing at 24%. (T. II at 342, 476, T. III at 745). As a result, Bank One, which held a mortgage on all of the farm property, declared a default on its loan and called the note, which was at that time approximately $452,000. (T. II at 489, 505, T. III at 676, 745-46, T. V at 1121, 1187-88, T. VI at 1263). At that time, there were also outstanding liens to First National Bank of Shelby and Mechanics Bank as well as other feed companies and suppliers.

**{¶12}** In early 1996, a family meeting was held between the Swank parents and their three sons. (T. II at 346). During this meeting, an offer was made to Robert to allow him to purchase the dairy farm for an assumption of the debt. (T. II at 346, 479, T.III at 679, T.V at 1223, T VI at 1265). Robert refused the offer and "stormed out the door." (T.II at 348, T. VI 1265).

**{¶13}** In January, 1996, Freeman, Jr. hired an attorney to help his parents with their financial problems.

**{¶14}** In the spring of 1996, farming operations were terminated and livestock and equipment were auctioned. The auction raised approximately $156,000.00. These funds were used to satisfy the AgriMark judgment and pay down the Bank One Mortgage.

**{¶15}** Freeman Jr. then purchased the defaulted first mortgage held by Bank One on the property and became the assignee on said mortgage.

{¶16} On August 22, 1996, Freeman and Rheabelle Swank executed a real estate option contract in favor of Freeman, Jr. and also executed new wills. These new wills again were reciprocal, naming each other as the primary beneficiary. The contingency clauses in these wills, however, reflected a change from the previous wills in that only Freeman, Jr. was named as the only contingent beneficiary; Robert and Clark were not named.[2]

{¶17} Since that time, Robert and Clark have filed various actions, asserting, among other things, their expectation to share in the inheritance of the farms.

{¶18} Robert Swank filed the first lawsuit, Case No. 96-CV-254, claiming that cattle sold by Freeman, Sr. and Rheabelle Swank belonged to him.

{¶19} Thereafter, on or about January 3, 1997, Robert and E. Clark Swank filed Case No. 97-CV-11, in which they asserted claims against their parents for an equitable partnership in the farm, constructive fraud, restitution, promissory estoppels. They also raised claims of intentional interference with their expectancies of inheritance against Freeman, Jr. and Mary Jane Swank.

{¶20} On April 3, 1998, Appellees filed a First Amended Complaint and Supplemental Complaint, alleging (1) breach of partnership and contractual obligations, (2) constructive fraud, (3) unjust enrichment, (4) interference with expectancy of inheritance and (5) punitive damages.

{¶21} Case Nos. 96-CV-254 and 97-CV-11 were consolidated under Case No. 254, along with two other cases (96-CV-501 and 96-CV-278) which are not at issue in this case.

---

[2] In 1998, the Swanks, Sr. signed almost identical reciprocal wills, again naming Freeman, Jr. as the sole contingent beneficiary.

**{¶22}** In 1998 and 1999, the farm real estate was conveyed to Freeman, Jr. and his wife Mary Jane in exchange for assumption of the remaining debt. (T. IV at 948-950, 976; T. III at 780-82).

**{¶23}** In 1998, in response to Parents sale and *inter vivos* transfer of a portion of the farm to Appellant, Appellees also instituted probate proceedings to have Parents declared legally unfit to handle their own legal affairs. See, *In re Freeman J. Swank, Sr. and Rheabelle Swank*, Richland County Court of Common Pleas, Probate Division, Case Nos. 982036 and 982037. Specifically, Appellees claimed a guardianship was necessary to protect Parents from further improvident disposition of their property; to evaluate and seek to remedy any past breaches of the Parents' rights; and to protect the interests of the Parents in the litigation described above.

**{¶24}** On June 2, 1998, the Richland County Court of Common Pleas, Probate Division found that applicants (Appellees) seeking the imposition of a guardianship for Parents failed to present clear and convincing evidence which, even if accepted as true, would establish that Parents were incompetent as defined in R.C. §2111.01(D). In addition, the Richland County Probate Court found there was insufficient evidence to merit appointment by the court of a physician to examine either of the Parents. Id.

**{¶25}** In 2000, Robert and Clark Swank filed Case No. 00-CV-649, wherein they asked for a declaratory judgment that Freeman, Jr.'s conduct was malicious, that he had engaged in a conspiracy and/or other tortious conduct, including spoliation, fabrication, and distortion of evidence and further attempted to disrupt their prosecution of Case No. 97-CV-11.

{¶26} Specifically, Clark and Robert alleged that First National Bank (nka First Citizens Bank) and its officer conspired with Freeman Sr. and Freeman, Jr.'s attorneys to create the appearance that the farming operation was in financial difficulties, so as to enable Freeman Jr. to acquire the property. Clark and Robert alleged that they knew or should have known of Clark and Robert's claims against the property, and they argued the farm was actually solvent.

{¶27} On January 9, 2001, the trial court dismissed Case No. 00-CV-649, finding no fraud or wrongful disruption. In 00-CV-649, the trial court discussed Appellants claims, finding the allegations in the complaint against Freeman, Jr. and Mary Jane consisted of "nothing more than what any owner of property might do * * *." Judgment Entry of January 9, 2001, at page 2.

{¶28} In case number 00-CV-649, Clark and Robert filed a notice of appeal and also a motion for relief from judgment pursuant to Civ.R. 60(B). However, they later withdrew both the appeal and the motion.

{¶29} In 2002, Robert and Clark filed Case No. 02-CV-12. The defendants in that case filed motions for summary judgment. In granting defendants' motions for summary judgment, the trial court found the allegations in 00-CV-649 and 02-CV-12 were virtually the same against all defendants. The court found the action was barred by the principles of *res judicata*, and noted Civ.R. 41(B)(3) required the court to consider the dismissal of 00-CV-649 to be on the merits because the order did not specify otherwise.

{¶30} Robert and Clark appealed to this Court, which affirmed the decision of the trial court in *Swank v. Swank*, Richland App. No. 10-CA-2, 2010-Ohio-3105.

{¶31} By Judgment Entry filed February 1, 2001, the trial court bifurcated the issues in the Case No. 97-CV-11-H and ordered that the "nature and extent of the claims by Plaintiffs Robert and Clark Swank to be an equitable interest in the Swankaire Farms and against Defendants" be tried to the court.

{¶32} Two bench trials referred to as Phase I and Phase II followed in 2001 and 2004, respectively.

{¶33} During the Phase 1 trial which commenced on March 19, 2001, the trial court ordered Appellees Robert and Clark Swank to raise and prosecute any equitable claims they had in the farm property. Appellees chose to pursue a theory based on the existence of an equitable partnership. At the conclusion of Phase I, the trial court found instead that there existed an agreement between Appellees and their parents and that such agreement was based on an exchange of promises and performance.

{¶34} Based on its finding in Phase I, the trial court set forth the issues to be determined in Phase II as (1) determining the value of the farm and related personal property as of December, 1995, (2) determining the value of Robert Swank's interest in the farm property and related personal property, and (3) determining Clark Swank's interest in the farm property and related personal property.

{¶35} In February, 2004, a bench trial was held and the trial court determined that the net equity in the farm property and related chattels as of December, 1995, was $324,243. The trial court determined that Robert Swank was entitled to 42% of the net equity or $163,350.06 and E. Clark Swank was entitled to 35% of the net equity, or $113,625.05.

{¶36} On April 29, 2004, Freeman Swank, Sr. died. The sole beneficiary of his Last Will and Testament was his wife, Rheabelle Swank. No challenges or will contest actions were raised as to Mr. Swank's will.

{¶37} On November 16, 2004, the trial court issued its Judgment Entry on Phase I and Phase II.

{¶38} Both parties filed appeals from the November 16, 2004, decision with this Court. By Opinion filed October 17, 2005, this Court decided the case of *Swank, et al. v. Estate of Swank, et al.,* Richland App. Nos. 2004-CA-0110, 2004-CA-0111, and 2004-CA-0112, 2005-Ohio-5524. In the 2005 appeal, this Court reviewed several cases arising out of the Court of Common Pleas, including 97-CV-11. This Court found the various contractual interests Clark and Robert claimed were in reality an unenforceable contract to make a will, because there was no present interest, by partnership or otherwise, supported by the evidence and that the trial court's conclusion was contrary to R.C. §2107.04. *Swank* at paragraph 91.

{¶39} In remanding the matter back to the trial court, this Court also reversed the dismissal of Freeman, Sr. and Rheabelle Swank, holding that the merits of alleged claims other than that of entitlement to a present interest in the parents' farm real estate needed to be addressed. This Court also stated the presence of Parents as parties may be of consequence relating to unjust enrichment, sale of chattels, and the assertion of interference with the expectancy of inheritance claims. Id. at 94.

{¶40} On May 3, 2007, Appellants Freeman, Jr. and Mary Jane moved for summary judgment as to all remaining issues. As to the Appellees' assertion of interference with the expectancy of inheritance by Appellant, Appellant argued

Appellees could not establish they had an expectancy of inheritance. In Appellant's Motion for Summary Judgment, Appellant argued that Appellees admitted they are not entitled to any interest in the land until both of their parents are dead. (Phase I, T. at 263-264).

{¶41} By Judgment Entry filed June 28, 2007, the trial court denied all parties' motions for summary judgment and stated the case would be set for trial. Thereafter, on December 7, 2007, the case was reassigned, and in early 2008, the parties prepared case summaries in an attempt to narrow the remaining issues in the case.

{¶42} In November 2008, Appellees filed a Motion to Renew previously filed motions, including a Motion for Partial Summary Judgment seeking judgment: (i) against Appellant for constructive fraud; and (ii) against Appellant and Parents for fraudulent conveyance related to the transfer of a lien interest and *inter vivos* transfer by contract of the farm to Appellant by Parents.

{¶43} On December 22, 2008, Appellant filed a reply memorandum to Appellees' Motion for Summary Judgment.

{¶44} By Judgment Entry dated December 8, 2009, the trial court denied all pending motions for summary judgment. The trial court found that the operative pleading in this matter was Appellees' First Amended and Supplemental Complaint dated April 3, 1998. The trial court found plaintiffs' claims of promissory estoppel and *quantum meruit* were inadequately pled as individual claims and that the claim of constructive fraud was waived because Plaintiffs failed to raise it in the Phase I trial.

{¶45} The trial court found that the only issues remaining for trial were limited to unjust enrichment, interference with expectancy of inheritance against Appellant with

compensatory and punitive damages, counterclaims of Parents for fraud and conversion, and the damage claim related to the sale of chattels.

{¶46} The trial court further stated that because this Court had ruled that Appellees had no present interest in the land, issues relating to the conveyance of the land including fraudulent conveyance, conspiracy, and spoliation of documents were not properly raised by Appellees as part of the original claim and have been precluded by the ruling of this Court.

{¶47} Said Judgment Entry also denied Plaintiffs' motion for leave to amend complaint.

{¶48} On September 27, 2010, a jury trial commenced on plaintiffs' claims of unjust enrichment against Freeman Swank, Sr. and Rheabelle Swank, interference with expectancy of inheritance against Freeman Swank, Jr. and the counterclaims of defendants for fraud and conversion. Also to be considered by the jury were damage claims as to sales of chattels and cattle.

{¶49} On October 7, 2010, the jury found in favor of Appellee Robert Swank on his claim related to the sale of cattle, and to Robert and E. Clark on their claims against Freeman Swank, Sr. and Rheabelle Swank for unjust enrichment[3] and against Freeman Swank, Jr. and Mary Jane Swank for interference with expectancy of inheritance. The jury also awarded $1.00 in punitive damages to each plaintiff and further found that plaintiffs were entitled to recover attorney fees against Freeman Swank, Jr. and Mary Jane Swank.

---

[3] As to the unjust enrichment claims against Parents, the judgments awarded to Appellee Robert L. Swank was the sum of $605,531 in compensatory damages, plus costs and interest, and to Appellee E. Clark Swank the sum of $579,849 in compensatory damages, plus costs and interest.

**{¶50}** By Judgment Entry docketed November 24, 2010, the trial court entered judgment upon the verdicts and awarded to Plaintiff-Appellee Robert L. Swank on his claim of intentional interference with and expectancy interest the sum of $767,666.00 in compensatory damages, $1.00 in punitive damages, and $75,000.00 in attorney fees for a total judgment of $842,667.00 plus interest at four percent (4%) per annum from October 7, 2010 until paid and costs. The judgment awarded to Plaintiff-Appellee E. Clark Swank on his claim of intentional interference with and expectancy interest the sum of $607,667.00 in compensatory damages, $1.00 in punitive damages, and $75,000.00 in attorney fees for a total judgment of $682,668.00 plus interest at four percent (4%) per annum from October 7, 2010, until paid and costs.

**{¶51}** On or about December 6, 2011, Appellant filed a Motion for Judgment Notwithstanding the Verdicts in favor of Appellees or, in the alternative, for a New Trial on the claims of Appellees.

**{¶52}** On December 20, 2010, the trial court issued an Order Granting JNOV for Appellants on Count III (unjust enrichment), Order Denying Motion for JNOV or New Trial on Count IV (intentional interference with expectation of inheritance) and punitive damages and attorney fees. This Order was journalized on December 21, 2010.

**{¶53}** It is from this Order and the November 24, 2010, Judgment Entry that Appellants Freeman Swank, Jr. and Mary Jane Swank filed their separate appeals and Appellees Robert Swank and E. Clark Swank filed their cross-appeal.

## ASSIGNMENTS OF ERROR

### APPEAL

**{¶54}** Appellant **Mary Jane Swank** assigns four errors to the trial court:

{¶55} "I. THE TRIAL COURT ERRED IN FAILING TO DIRECT A VERDICT AND/OR A JUDGMENT NOTWITHSTANDING THE VERDICT SINCE APPELLEES LACKED LEGAL STANDING TO ASSERT AN INTENTIONAL INTERFERENCE WITH EXPECTANCY OF INHERITANCE CLAIM.

{¶56} "II. THE TRIAL COURT ERRED IN FAILING TO DIRECT A VERDICT AND/OR A JUDGMENT NOTWITHSTANDING THE VERDICT SINCE APPELLEES INTENTIONAL INTERFERENCE CLAIM FAILS AS A MATTER OF LAW BECAUSE APPELLEES HAD NO ACTUAL EXPECTANCY OF INHERITANCE AT THE TIME OF FREEMAN SWANK, SR.'S DEATH NOR COULD THEY ESTABLISH THAT THEY WOULD HAVE INHERITED BUT FOR THE ALLEGED TORTIOUS CONDUCT.

{¶57} "III. THE JURY'S VERDICT IS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE AND THEREFORE THE TRIAL COURT ERRED IN FAILING TO ISSUE A JUDGMENT NOTWITHSTANDING THE VERDICT

{¶58} "IV. AS THERE WAS ABSOLUTELY NO COMPETENT CREDIBLE EVIDENCE ESTABLISHING THAT APPELLANT MARY JANE SWANK COMMITTED ANY INTENTIONAL TORT OR IN ANYWAY INTENTIONALLY INTERFERED AND DEPRIVED APPELLEES OF THEIR ALLEGED INHERITANCE, THE JURY'S VERDICT AND TRIAL COURT JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶59} Appellant **Freeman Swank, Jr.** raises the following four assignments of error:

{¶60} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DENIED APPELLANT'S MOTION FOR A DIRECTED VERDICT AND IN THE

ALTERNATIVE APPELLANT'S MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT AND/OR APPELLANT'S MOTION FOR A NEW TRIAL.

{¶61} "II. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT AND IN THE ALTERNATIVE APPELLANT'S MOTION FOR A NEW TRIAL AS THE JURY'S VERDICT IS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE.

{¶62} "III. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT AND IN THE ALTERNATIVE APPELLANT'S MOTION FOR A NEW TRIAL AS THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶63} "IV. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN AWARDING ATTORNEY FEES TO APPELLEES."

**CROSS-APPEAL**

{¶64} Cross-Appellants **Robert L. Swank** and **E. Clark Swank** assign three errors:

{¶65} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING THE MOTIONS OF DEFENDANTS RHEABELLE SWANK AND ESTATE OF FREEMAN SWANK, SR., FOR JUDGMENT NOTWITHSTANDING THE VERDICTS AS TO THE CLAIM OF UNJUST ENRICHMENT.

{¶66} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW IN DISMISSING PLAINTIFFS' CLAIMS BASED ON CONSTRUCTIVE FRAUD AND PROMISSORY ESTOPPEL.

**{¶67}** "III. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE MOTION OF PLAINTIFFS FOR LEAVE TO FILE AN AMENDED OR SUPPLEMENTAL COMPLAINT.

**I, II, III, IV (Mary Jane Swank)**
**I, II, III (Freeman Swank, Jr.)**

**{¶68}** We shall address the Mary Jane Swank's assignments of error and Freeman Swank, Jr.'s first three assignments of error together as they all deal with Appellees' claims of interference with expectancy of inheritance.

**{¶69}** Appellants herein argue that the trial court erred in failing to direct a verdict or in failing to grant judgment notwithstanding the verdict as to Appellees' claim of intentional interference with expectancy of inheritance claims. Appellants further argue that the jury's verdict as to such claims is not supported by the manifest weight or sufficiency of the evidence.

**{¶70}** Ohio Civil Rule 50 governs directed verdicts and judgments notwithstanding the verdict, and reads, in pertinent part:

**{¶71}** "(A) Motion for a directed verdict

**{¶72}** " ***

**{¶73}** "(4) *When granted on the evidence.* When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

**{¶74}** "(B) Motion for judgment notwithstanding the verdict

**{¶75}** "Whether or not a motion to direct a verdict has been made or overruled and not later than fourteen days after entry of judgment, a party may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion; or if a verdict was not returned such party, within fourteen days after the jury has been discharged, may move for judgment in accordance with his motion. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment. If the judgment is reopened, the court shall either order a new trial or direct the entry of judgment, but no judgment shall be rendered by the court on the ground that the verdict is against the weight of the evidence. If no verdict was returned the court may direct the entry of judgment or may order a new trial."

**{¶76}** When ruling on a motion for judgment notwithstanding the verdict, a trial court applies the same test as in reviewing a motion for a directed verdict. *Ronske v. Heil Co.,* Stark App.No. 2006-CA-00168, See also, *Pariseau v. Wedge Products, Inc.* (1988), 36 Ohio St.3d 124, 127, 522 N.E.2d 511. "A motion for judgment notwithstanding the verdict is used to determine only one issue i.e., whether the evidence is totally insufficient to support the verdict." *Krauss v. Streamo,* Stark App. No. 2001 CA00341, 2002-Ohio-4715, paragraph 14; see also, *McLeod v. Mt. Sinai Medical Center* (2006), 166 Ohio App.3d 647, 853 N.E.2d 1235, reversed on other grounds, 116 Ohio St.3d 139, 876 N.E.2d 1201. Neither the weight of the evidence nor the credibility of the witnesses is a proper consideration for the court. *Posin v. A.B.C. Motor Court*

*Hotel, Inc.* (1976), 45 Ohio St.2d 271, 275, 344 N.E.2d 334. See, also, Civ.R. 50(B); and *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 347, 504 N.E.2d 19. In other words, if there is evidence to support the nonmoving party's side so that reasonable minds could reach different conclusions, the court may not usurp the jury's function and the motion must be denied. *Goodyear Tire & Rubber Co. v. Aetna Casualty & Surety Co.,* 95 Ohio St.3d 512, 769 N.E.2d 835, 2002-Ohio-2842. Again, in ruling on a motion for judgment notwithstanding the verdict, the court does not determine factual issues, but only questions of law, even though it is necessary to review and consider the evidence in deciding the motion. *Goodyear* at paragraph 4.

**{¶77}** Appellate review of a ruling on either a motion for directed verdict or a motion for judgment notwithstanding the verdict is de novo, *Midwest Energy Consultants, L.L.C. v. Utility Pipeline, Ltd.,* 5th Dist.App. No. 2006CA00048, 2006-Ohio-6232; *Ronske v. Heil,* supra; *Cleveland Electric Illuminating Company v. Public Utility Commission,* 76 Ohio St.3d 521, 523, 1996-Ohio-298, 668 N.E.2d 889, citation deleted.

<u>Intentional interference with expectancy of inheritance</u>

**{¶78}** In *Firestone v. Galbreath* (1993), 67 Ohio St.3d 87, 616 N.E.2d 202, the Ohio Supreme Court first recognized the tort of intentional interference with expectancy of inheritance. The essential elements of the claim are: (1) the existence of a plaintiff's expectancy of inheritance; (2) a defendant's intentional interference with plaintiff's expectancy, (3) the defendant's tortious conduct involving the interference, such as fraud, duress, or undue influence; (4) a reasonable certainty that, but for the defendant's interference, the expectancy of inheritance would have been realized; and (5) damage resulting from the interference. *Id.* at 88, 616 N.E.2d 202.

**{¶79}** Before pursuing an intentional interference with expectancy of inheritance (IIEI) claim, a plaintiff must first exhaust all appropriate probate procedures. *Firestone v. Galbreath* (Oct. 6, 1992), 10th Dist. No. 92AP-159. See also *Roll v. Edwards,* 156 Ohio App.3d 227, 2004-Ohio-767, ¶ 28. The rationale is that the probate proceedings may resolve the damages issue by simply validating the will through which the plaintiff claims an expectancy. *In re Estate of Goehring,* 7th Dist. No. 05 CO 35, 2007-Ohio-1133, ¶ 66. An exception to the rule allows a plaintiff to bypass probate if no remedy is available in the probate court or if that remedy would be inadequate. *Firestone v. Galbreath* (S.D.Ohio 1995), 895 F.Supp. 917, 926. Thus, "[c]ourts must look to whether the probate court can provide the plaintiff with adequate relief in the form of the actual damages which would be recovered in the tort action; punitive damages awards are not considered a valid expectation in this context." *Id.* Rather, the circumstances surrounding the tortious conduct must be what effectively precludes adequate relief in the probate court. *DeWitt v. Duce* (Fla.1981), 408 So.2d 216, 219.

**{¶80}** With regard to exhaustion of remedies, we find that the two probate actions which could have been raised in the case were a will contest action or a declaratory judgment action to determine the validity of the inter vivos transfer of the farm property.

**{¶81}** However, we do not find that either Robert or Clark would have had standing to raise such claims with the probate court.

**{¶82}** In the case sub judice, Freeman, Sr.'s 1996 will left everything to his wife Rheabelle, who survived him. Appellees were not even named as contingent beneficiaries in this will.  Even under all of Freeman, Sr.'s previous wills, including the

ones that did include Robert and Clark as contingent beneficiaries, Rheabelle was always the primary beneficiary. Appellees only ever stood to inherit if their mother predeceased their father, which did not happen, and their mother was the sole beneficiary of their father's estate. As long as Rheabelle survived Freeman, Sr., the result would have been the same.

**{¶83}** Furthermore, at the time of his death, Freeman, Sr. no longer owned the farm real estate, which is what Appellees claim as the inheritance they were expecting. The farm property had been transferred to Freeman, Jr. approximately nine years prior to Freeman, Sr.'s death. In cases where there are questions raised as to the validity of certain *inter vivos* transfers that involve property which would revert to the estate if the transfers are found invalid, the action is related to the administration of the estate and is within the *exclusive* jurisdiction of the probate court." (Emphasis added.) *Bobko v. Sagen* (1989), 61 Ohio App.3d 397, 572 N.E.2d 823.

**{¶84}** A declaratory judgment action could have been filed with the probate court to determine the validity of *inter vivos* transfers to Freeman, Jr. A successful challenge would have resulted in the transfers being invalidated and the property would have reverted to the estate. *Bobko*, supra. See, also, *In re Estate of Morrison* (1953), 159 Ohio St. 285, 112 N.E.2d 13 (holding that matters "as to the title to and the status of certain personal property-whether it properly belongs to the estate and should be administered as a part thereof or whether the decedent effectually disposed of such property during his lifetime * * *" is "within the jurisdiction of the Probate Court and are determinable by that tribunal")*; Johnson v. Johnson* (June 25, 1999), Vinton App. No. 98CA519, 1999 WL 527753.

**{¶85}** Again, however, the only primary beneficiary to Freeman, Sr.'s estate was Rheabelle. As such, she was the only person with standing to raise such a claim.

**{¶86}** In *Firestone,* the Ohio Supreme Court stated that any person who can prove the elements of the tort of intentional interference with expectancy of inheritance has standing to maintain a claim. Id*.* As set forth above, the fourth element of the test requires that Appellants demonstrate to a reasonable certainty that the expectancy of inheritance would have been realized but for the tortious conduct. This requires a showing to a reasonable certainty that, had the alleged undue influence not occurred, appellants would have realized their expectancy to inherit from the decedent's estate.

**{¶87}** Applying a de novo standard of review, we find that the trial court erred when it determined that Appellees had standing to assert this claim. "Standing" means that the plaintiff has some personal stake in the outcome of the controversy, some concrete injury that will be resolved by the court, rather than a hypothetical or conjectural matter. *Bourke v. Carnahan,* 163 Ohio App.3d 818, 2005-Ohio-5422, 840 N.E.2d 1101, ¶ 10.

**{¶88}** The facts of the case, as set forth above, make it clear that the Appellees would not have been beneficiaries of Freeman, Sr.'s estate (probate or non-probate), even if the purported tortious interference had not occurred. In light of these facts, it is impossible for Appellees to prove the fourth element of the tort.

**{¶89}** Further, there was no evidence presented that the Freeman, Sr.'s transfer of the farmland to Freeman, Jr. during her lifetime was anything other than by voluntary choice. If Appellees felt that the conveyance of the property by the parents to Freeman, Jr. was based on undue influence or was in some way coerced or fraudulent, Appellees

should have brought an action for fraudulent conveyance within the statute of limitations allowed for such an action.

**{¶90}** It appears that Appellees did unsuccessfully attempt to try and stop the transfer of the land by bringing an action before the probate court challenging their parents' competency and seeking the appointment of a guardian for the Swank parents. The trial court, however, found insufficient evidence was presented that the parents were incompetent to handle their own affairs and understood.  Instead, the trial court found:

**{¶91}** "There is also evidence that the [Parents], in attempting to salvage their operations and restore their financial well-being were involved in differences of opinion with children which resulted in hostility toward two, and favorable relationships with one. That unfortunately happens, family fights and squabbles, it's very unfortunate.  But in itself is not evidence of incompetency."  (T. of Recording of Judge Christiansen's May 22, 1998, Ruling Only at 2).

**{¶92}** At any time during their lifetimes, Freeman Swank, Sr. and Rheabelle Swank could have chosen to sell all or part of the farmland which Appellees claim they should have inherited.  Ohio law does not provide a means to prevent a competent person from using or disposing of property as he or she wishes, even if to do so may appear unfair or unwise to other persons.

**{¶93}** Alternatively, any number of events could have transpired which could have had an effect on the Swank, Sr.'s ownership of the property.  In this case, financial problems caused the parents to have to sell and/or transfer the property in exchange for a release of their debts.  The Swank, Sr.'s financial problems were very real, as

evidenced by the record. Their son Freeman, Jr. offered them an opportunity to get out from under their debt and still be able to continue to live on the farm the remainder of their lives. The fact that they sold/transferred the property to one of their sons and not an unrelated person does not automatically create an undue influence situation.

**{¶94}** Having found that Appellees did not have standing to pursue claims of intentional interference with expectation of inheritance against Freeman Swank, Jr. and/or Mary Jane Swank, we find Mary Jane Swank's assignments of error I, II, III and IV and Freeman Swank, Jr.'s assignments of error I, II and III well-taken and sustain same.

IV.

**{¶95}** In Appellant Freeman, Jr.'s fourth assignment of error, he argues that the trial court erred in awarding attorney fees in this action. We agree.

**{¶96}** Based on our disposition of the above assignments of error, we find that attorney fees were improperly awarded in this matter.

**{¶97}** Appellant's fourth assignment of error is sustained.

<u>Cross-Appeal</u>

I.

**{¶98}** In their first assignment of error, Cross-Appellants argue that the trial court erred in granting Cross-Appellees' motion for judgment notwithstanding the verdict on their claims of unjust enrichment.

**{¶99}** As set forth above, Ohio Civ.R. 50 governs directed verdicts and judgments notwithstanding the verdict, and reads, in pertinent part:

**{¶100}**       "(B) Motion for judgment notwithstanding the verdict

{¶101}    "Whether or not a motion to direct a verdict has been made or overruled and not later than fourteen days after entry of judgment, a party may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion; or if a verdict was not returned such party, within fourteen days after the jury has been discharged, may move for judgment in accordance with his motion. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment. If the judgment is reopened, the court shall either order a new trial or direct the entry of judgment, but no judgment shall be rendered by the court on the ground that the verdict is against the weight of the evidence. If no verdict was returned the court may direct the entry of judgment or may order a new trial."

{¶102}  When ruling on a motion for judgment notwithstanding the verdict, a trial court applies the same test as in reviewing a motion for a directed verdict. *Ronske v. Heil Co.,* Stark App. No. 2006-CA-00168, See also, *Pariseau v. Wedge Products, Inc.* (1988), 36 Ohio St.3d 124, 127, 522 N.E.2d 511. "A motion for judgment notwithstanding the verdict is used to determine only one issue i.e., whether the evidence is totally insufficient to support the verdict." *Krauss v. Streamo,* Stark App. No. 2001 CA00341, 2002-Ohio-4715, paragraph 14; see also, *McLeod v. Mt. Sinai Medical Center* (2006), 166 Ohio App.3d 647, 853 N.E.2d 1235, reversed on other grounds, 116 Ohio St.3d 139, 876 N.E.2d 1201. Neither the weight of the evidence nor the credibility of the witnesses is a proper consideration for the court. *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 275, 344 N.E.2d 334. See, also, Civ.R. 50(B); and

*Osler v. Lorain* (1986), 28 Ohio St.3d 345, 347, 504 N.E.2d 19. In other words, if there is evidence to support the nonmoving party's side so that reasonable minds could reach different conclusions, the court may not usurp the jury's function and the motion must be denied. *Goodyear Tire & Rubber Co. v. Aetna Casualty & Surety Co.,* 95 Ohio St.3d 512, 769 N.E.2d 835, 2002-Ohio-2842. Again, in ruling on a motion for judgment notwithstanding the verdict, the court does not determine factual issues, but only questions of law, even though it is necessary to review and consider the evidence in deciding the motion. *Goodyear* at paragraph 4.

{¶103} Appellate review of a ruling on a motion for judgment notwithstanding the verdict is de novo, *Midwest Energy Consultants, L.L.C. v. Utility Pipeline, Ltd.,* 5th Dist.App. No. 2006CA00048, 2006-Ohio-6232; *Ronske v. Heil,* supra.

{¶104} Three elements comprise an unjust enrichment claim: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Hambelton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183, 465 N.E.2d 1298. Unjust enrichment is inapplicable to gifts or any officious act. *Wendover Rd. Property Owners Assn. v. Kornicks* (1985), 28 Ohio App.3d 101, 502 N.E.2d 226, syllabus.

{¶105} In its Entry granting Cross-Appellee's JNOV, the trial court found that the testimony of Cross-Appellant's witness Dr. James Zinser failed to provide "evidence of the value of services furnished by Robert and Clark Swank and claimed to be unjustly retained by Freeman Swan, Sr. [sic] and Rheabelle Swank. It is proof only of earnings the plaintiffs might have made had they worked for a higher wage. The testimony was

insufficient and there is no competent, credible evidence of the value of any unjust enrichment." (Dec. 20, 2010, Order at 2).

**{¶106}** Upon review of the record, we likewise find that Cross-Appellants failed to present sufficient evidence of the value of any unjust enrichment to Freeman Swank, Sr. and Rheabelle Swank. In this case, Cross-Appellants worked on the farm owned by their parents for an agreed upon wage, free rent for their entire families and other miscellaneous benefits. The fact that they could have made more money working somewhere else does not constitute unjust enrichment on the part of their parents. While it may be true that they did so based on an assumption that they would someday inherit part of the farm, such assumptions were premised on the actuality that their parents still owned the farm at the time of their death. As evidenced by the events which took place in this case, any number of factors could cause their parents to be divested of their real estate: i.e., at any time during their lives, their parents could have chosen to sell all or part of their lands or financial obligations could cause them to default on their loans resulting in foreclosure.

**{¶107}** Based on the foregoing, we find Cross-Appellants' first assignment of error is overruled.

II.

**{¶108}** In their second assignment of error, Cross-Appellants argue that the trial court erred in dismissing their claims based on constructive fraud and promissory estoppel. We disagree.

<u>Promissory Estoppel</u>

{¶109} Promissory estoppel is an equitable doctrine for preventing the harm resulting from reasonable reliance upon false representations. *GGJ, Inc. v. Tuscarawas Cty. Bd. of Commrs.,* Tuscarawas App.No. 2005AP070047, 2006-Ohio-2527, ¶ 11, citing *Karnes v. Doctors Hosp.* (1990), 51 Ohio St.3d 139, 142, 555 N.E.2d 280. The party asserting promissory estoppel bears the burden of proving, by clear and convincing evidence, all of the elements of the claim. *In re Estate of Popov,* Lawrence App. No. 02CA26, 2003-Ohio-4556, ¶ 30.

{¶110} The elements necessary to establish a claim for promissory estoppel are: (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party claiming estoppel must be injured by the reliance. *Schepflin v. Sprint-United Telephone of Ohio* (April 29, 1997), Richland App.No. 96-CA-62-2, citing *Stull v. Combustion Engineering, Inc.* (1991), 72 Ohio App.3d 553, 557, 595 N.E.2d 504.

{¶111} We have reviewed Cross-Appellants' first Amended Complaint and find that promissory estoppel was not raised against Freeman Swank, Sr. and/or Rheabelle Swank. As such, we find that the trial court did not err in dismissing such individual claim.

### Constructive fraud

{¶112} Constructive fraud is an equitable action which does not require proof of fraudulent intent. *Perlberg v. Perlberg* (1969), 18 Ohio St.2d 55, 247 N.E.2d 306. Constructive fraud is defined as " 'a breach of a legal or equitable duty, which, irrespective of moral guilt of the fraud feasor, the law declares fraudulent, because of its tendency to deceive others, to violate public or private confidence, or to injure public

interests.' " *Camp St. Mary's Assn. of the W. Ohio Conf. of the United Methodist Church, Inc.* at ¶ 22, quoting *Cohen v. Estate of Cohen* (1986), 23 Ohio St.3d 90, 91-92, 491 N.E.2d 698; *L & N Partnership v. Lakeside Forest Assn.,* 183 Ohio App.3d 125, 916 N.E.2d 500, 2009-Ohio-2987.

{¶113} Constructive fraud is different from actual fraud. Actual fraud requires an "affirmative misrepresentation," while constructive fraud "results from the 'failure to disclose facts of a material nature where there exists a duty to speak.' " *Camp St. Mary's Assn. of the W. Ohio Conf. of the United Methodist Church, Inc.*, quoting *Baughman v. State Farm Mut. Auto. Ins. Co.,* 9th Dist. No. 22204, 2005-Ohio-6980, quoting *Layman v. Binns* (1988), 35 Ohio St.3d 176, 178, 519 N.E.2d 642. Constructive fraud typically exists where the parties to an agreement have a special confidential or fiduciary relationship. *Cohen* at 92, 491 N.E.2d 698.

{¶114} With regard to the claim of constructive fraud, the trial court found that while such claim had been appropriately pled, it was waived because Cross-Appellants failed to pursue it during the Phase I trial.

{¶115} In this case, the trial court bifurcated the trials into legal and equitable issues, with the equitable issues being tried in the first trial referred to as Phase I. Cross-Appellants did not pursue their claims for constructive fraud during this phase of the trial. We therefore find that the trial court did not err or abuse its discretion in determining that claims were therefore waived.

{¶116} Cross-Appellants' second assignment of error is overruled.

III.

**{¶117}** In their third assignment of error, Cross-Appellants argue that the trial court erred in denying their November 18, 2008, motion for leave to file an amended or supplemental complaint. We disagree.

**{¶118}** Specifically, Cross-Appellants sought to amend their Complaint to add as additional defendants, Mary Jane Swank in her official capacity as a purported trustee and Regal Eagle Enterprises, Inc., a corporation owned and/or controlled by Freeman Swank, Jr. or Freeman Swank, Jr. and Mary Jane Swank jointly.

**{¶119}** Upon review, we find that Cross-Appellants filed their initial Complaint in this matter in 1997, followed by an Amended Complaint in 1998. They then moved the trial court for leave to amend again in 2000, 2002, 2007, 2008 and 2009, all of which were denied.

**{¶120}** A trial court's determination whether to grant a motion for leave to amend a complaint will not be reversed on appeal absent an abuse of discretion. *Darulis v. Ayers* (Feb. 2, 1999), 5th Dist. No.1996CA00398 citing *Cselpes v. Cleveland Catholic-Diocese* (1996), 109 Ohio App.3d 533, 541, 672 N.E.2d 724. To demonstrate abuse of discretion in denying a motion for leave to amend complaint, appellant must demonstrate more than error of law and that the trial court's denial of the motion was unreasonable, arbitrary or unconscionable. *Id.*

**{¶121}** Pursuant to Civ.R. 15(A):

**{¶122}** "A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty-eight days after it is served. Otherwise a

party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within fourteen days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders."

{¶123} The Ohio Supreme Court has held that "it is an abuse of discretion for a court to deny a motion, timely filed, * * *, where it is possible that plaintiff may state a claim upon which relief may be granted and no reason otherwise justifying denial of the motion is disclosed." *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 297 N.E.2d 113, paragraph six of the syllabus.

{¶124} The Ohio Supreme Court refined the holding in *Peterson,* supra, by adopting the test found in *Solowitch v. Bennett* (1982), 8 Ohio App.3d 115, 117, 456 N.E.2d 562, that "there must be at least a *prima facie* showing that the movant can marshal support for the new matters sought to be pleaded, and that the amendment is not simply a delaying tactic, nor one which would cause prejudice to the defendant." *Wilmington Steel Products, Inc. v. Cleve. Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 123, 573 N.E.2d 622, syllabus.

{¶125} While Civ.R. 15(A) allows for liberal amendment, the trial court does not abuse its discretion if it denies a motion to amend pleadings if there is a showing of bad faith, undue delay or undue prejudice to the opposing party. *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 465 N.E.2d 377, paragraph two of syllabus; *Turner v. Cent. Local School Dist.,* 85 Ohio St.3d, 95, 99, 1999-Ohio-207, 706 N.E.2d 1261.

**{¶126}** By the time Cross-Appellants filed the November, 2008, motion for leave to amend, this case had been pending for eleven (11) years and two trials had already taken place. As such, we find that the trial court did not abuse its discretion in denying Cross-Appellants' request to amend and/or supplement the Amended Complaint in this matter.

**{¶127}** Cross-Appellants' third assignment of error is overruled.

**{¶128}** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed in part and reversed in part.


By: Wise, J.

Hoffman, P. J., and

Edwards, J., concur.

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


ROBERT L. SWANK, et al.            :
                                     :

    Plaintiffs-Appellees         :

                                     :

-vs-                                 :          JUDGMENT ENTRY

                                     :

FREEMAN J. SWANK, JR., et al.     :

                                   :

    Defendants-Appellants    :          Case No. 2011 CA 8


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio, is reversed as to Robert Swank and E. Clark Swank's claims of intentional interference with expectation of inheritance, punitive damages and attorney fees and affirmed in all other aspects.

Costs assessed to Appellants.